CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

SLOAN HEFFRON (CABN 285347)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6730
Fax: (415) 436-7027
Sloan.heffron@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HAROLD HOLLIS,<br><br>Defendant. | CASE NOS. 25-CR-00423-JSW-1<br>22-CR-00447-JSW-2<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date: July 21, 2026<br>Time: 1:00 p.m.<br><br>The Honorable Jeffrey S. White |

## I. INTRODUCTION

On March 31, 2026, defendant Harold Hollis pled guilty to a violation of 18 U.S.C. § 922(g)(1) - Felon in Possession of a Firearm and Ammunition. Dkt. 16 (Plea Agreement) (the "2025 Case").[1] On the same date, Hollis also admitted to the violations of his federal supervised release alleged in Charges One, Two, Three, Six, Eight (as amended), and Nine of the Second Amended Petition (hereafter, "Second Amended Form 12") filed in his prior federal firearms case. *See* Case No. 22-CR-00447-JSW-2 (the "2022 Case") at dkts. 247 (Second Amended Form 12) and 279 (Minute Order).

Charges One, Two, and Three of the Second Amended Form 12 concern Hollis testing positive

[1] Unless otherwise noted, all citations to the "docket" refer to the record in Case No. 25-CR-00423-JSW-1 (the "2025 Case").

for marijuana, failing to submit to drug testing on two dates, and failing to participate in an outpatient mental health treatment program, respectively. Charge Six concerns Hollis's refusal to provide U.S. Probation with the passcode to his cell phone, in violation of his court-ordered search condition. Charges Eight and Nine of the Second Amended Form 12 are based on Hollis's possession of a loaded firearm, which is the same conduct underlying the sole count of the Indictment in the 2025 Case.

For the reasons set forth below, the United States respectfully recommends that the Court sentence Hollis to 42 months' imprisonment and three years' supervised release in the 2025 Case, and requests that the Court order forfeiture of the firearm and all ammunition referenced in the Indictment and the Plea Agreement. Dkt. 1 (Indictment) at 4; Plea Agreement ¶ 11. The United States further recommends that the Court sentence Hollis to 14 months' imprisonment in the 2022 Case, to run concurrently to any custodial sentence imposed in the 2025 Case. Because Hollis will be on supervised release in the 2025 Case, the government recommends that the Court not impose a further term of supervised release in the 2022 Case.

## II. BACKGROUND AND OFFENSE CONDUCT

In April 2024, this Court sentenced Hollis to 32 months in custody and three years of supervised release after Hollis pled guilty to a violation of 18 U.S.C. § 922(g)(1) in the 2022 Case. Dkt. 18 (Presentence Investigation Report or "PSR") at ¶ 41. On January 3, 2025, following his release from custody, Hollis began his term of supervised release. Second Amended Form 12 at 2.

On April 22, 2025, around 9:30 p.m., a police officer on patrol in San Francisco's Bayview neighborhood noticed that the driver of a silver car passing by him was not wearing a seatbelt. PSR ¶ 6. The officer made a U-turn and began driving after the silver car, which appeared to accelerate. *Id.* ¶ 7. The driver of the silver car turned right onto another street. *Id.* There, the officer witnessed the silver car crash into an unoccupied Toyota Corolla. *Id.* Despite the collision, the silver car continued driving, and the officer lost sight of the vehicle. *Id.*

Shortly after, the officer found an abandoned silver Hyundai sedan (the "Hyundai") with major front-end damage parked on the sidewalk outside a residence on the 1400 block of Oakdale Avenue, approximately two blocks southeast from the location of the earlier collision. *Id.* ¶ 8; Plea Agreement ¶ 2. The Hyundai had collided with a residence on the 1400 block of Oakdale, resulting in paint transfer.

PSR ¶ 8. By the time police arrived on scene, area residents were standing outside around the Hyundai. *Id.* An officer reviewed one resident's exterior surveillance video, which captured the Hyundai pulling up on the sidewalk at 9:38 p.m. *Id.* ¶¶ 9-10. The video showed the Hyundai's male driver, from behind, as he exited the driver's seat and ran into the street. *Id.* ¶ 10. There, the driver—later identified as Harold Hollis—entered the passenger seat of a waiting SUV that that drove him from the scene. *Id.*

Inside the Hyundai, police found a .40 caliber Glock Model 23 semiautomatic pistol containing an extended magazine on the front driver's side floorboard. *Id.* ¶¶ 11, 14. The extended magazine was loaded with 16 live rounds of .40 caliber ammunition, and an additional live round of .40 caliber ammunition was found in the barrel of the pistol. *Id.* ¶ 14.

Another San Francisco Police Department ("SFPD") officer reviewed the surveillance video and recognized the Hyundai's driver as Harold Hollis, with whom she was familiar due to an earlier investigation. Police submitted the pistol, extended magazine, unfired ammunition, and swabs of the Hyundai's steering wheel to the SFPD Crime Laboratory for DNA analysis, with a request that they be compared to a known DNA sample of Harold Hollis. The Crime Lab reported that DNA consistent with Hollis's DNA profile was found on one of the steering wheel swabs and on swabs of the pistol. *Id.* ¶ 15.

DMV records revealed that the Hyundai was an Avis rental vehicle, and an Avis representative provided investigators with information concerning the person who had rented the Hyundai for the period that included April 22 (hereafter, "Witness One"). *Id.* ¶¶ 13, 19. When questioned by law enforcement, Witness One acknowledged renting the Hyundai and allowing Harold Hollis to drive the vehicle. *Id.* ¶ 20. Witness One denied being present when the Hyundai was crashed, but said that Hollis later told Witness One that he (Hollis) had crashed and abandoned the car. *Id.*

## III. SENTENCING GUIDELINES CALCULATIONS

<u>Case No. 25-CR-00423-JSW-1</u>

The government agrees with U.S. Probation's calculations as to the applicable Sentencing Guidelines. *Id.* ¶¶ 3, 25-34. Specifically, the government agrees that the appropriate Guideline in this case is U.S.S.G. §2K2.1(a)(4)(B), resulting in a Base Offense Level of 20. *Id.* ¶ 25. Hollis's Total Offense Level is 17. *Id.* ¶ 34. This Total Offense Level accounts for a three-level reduction pursuant to U.S.S.G. §3E1.1(a)-(b) for acceptance of responsibility. *Id.* ¶¶ 32-33. The government agrees that

Hollis's 12 criminal history points place him within Criminal History Category V. *Id.* ¶¶ 42-44. An Offense Level of 17 in Criminal History Category V yields an advisory sentencing range of 46 to 57 months' imprisonment. U.S. Probation recommends that, in the 2025 Case, the Court sentence Hollis to a custodial term of 42 months, followed by three years' supervised release. *Id.* at p. 23. The government agrees.

Case No. 22-CR-00447-JSW-2

The government also agrees with U.S. Probation's Guidelines calculations concerning the supervised release violations in the 2022 Case, as set forth in the Second Amended Form 12. *See* Second Amended Form 12 at 8. As noted, Hollis admitted to the violations alleged in Charges One, Two, Three, Six, Eight (as amended), and Nine of the Second Amended Form 12. For purposes of sentencing exposure, the most serious of these violations is Charge Eight: that Hollis committed a new federal, state, or local crime by possessing a loaded firearm in a vehicle. Charge Eight is a Grade B violation under U.S.S.G. §7B1.1(a)(2). The government agrees with Probation's finding that Hollis fell under Criminal History Category III at the time he was originally sentenced in the 2022 case, and that the applicable Guidelines Range is therefore 8-14 months in custody. *Id.*

**IV. SECTION 3553(a) FACTORS**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that, in the 2025 Case, the Court sentence Hollis to a term of 42 months' imprisonment followed by three years of supervised release, to include each of the terms and conditions recommended by U.S. Probation. PSR at pp. 25-27, 29. In the 2022 Case, the government recommends that the Court revoke Hollis's supervised release and sentence him to 14 months' imprisonment, concurrent to the 2025 Case, with no term of supervision to follow.

While sentencing courts must consider each of the factors set forth in section 3553(a), the following warrant further discussion in these cases: the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1); the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the need for the sentence imposed to afford adequate deterrence to criminal conduct, 18 U.S.C. § 3553(a)(2)(B); the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law,

and provide just punishment for the offense, 18 U.S.C. § 3553(a)(2)(A);[2] and the need for the sentence imposed to protect the public from further crimes of the defendant, 18 U.S.C. § 3553(a)(2)(C).

The nature and circumstances of the 2025 Case justify a 42-month custodial sentence. All felon-in-possession cases are serious. This case is particularly serious because Hollis has two prior convictions for felonies involving firearms, has ties to the West Mobb gang, *see* PSR p. 24, and was under this Court's supervision at the time of the offense. The facts of the offense itself are egregious: Hollis possessed a loaded firearm while he was the driver and sole occupant of a car rented by an acquaintance. In attempting to evade police, Hollis crashed into an unoccupied vehicle, fled the scene, then crashed into a nearby apartment building, where he abandoned the rental car and was whisked away by another person in an effort to avoid detection. Hollis had been on supervised release less than four months when he possessed the loaded firearm charged in this case. *See* Second Amended Form 12 at 2 (supervision began January 3, 2025, and the offense date was April 22, 2025).

As to the history and characteristics of the defendant, Hollis was 30 years-old when he committed the offense charged in the 2025 Case, which marks the sixth separate prosecution since 2015 in which Hollis has been convicted of a felony offense. His prior convictions include robbery, assault with force likely to produce great bodily injury (two separate cases), evading police, and felon in possession of a firearm (two separate cases). PSR ¶¶ 37-41. He has spent the majority of his adult life either in custody or on some form of court-ordered supervision. This criminal history alone underscores the fact that Hollis poses a danger to the community and that a 42-month sentence is warranted.

On the other hand, Hollis's background includes mitigating factors. As noted in the PSR, Hollis has experienced significant trauma and adversity in his life. His childhood was marred by instability, as he was raised primarily by a single mother who suffered from chronic drug addiction before she succumbed to an overdose in 2020. PSR ¶ 49. Hollis resided in foster care between ages 13 and 14,

[2] 18 U.S.C. §3583(e) identifies the options available to a district court in revoking or modifying the conditions of a defendant's term of supervised release, and directs courts to consider "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(e). Notably, it does not include section 3553(a)(2)(A), and the Supreme Court recently held that a district court revoking a term of supervised release may not consider the factors listed in section 3553(a)(2)(A). *Esteras v. United States*, 606 U.S. 185, 204 (2025). Accordingly, with respect solely to the 2022 Case, the United States respectfully requests that the Court not consider the factors listed in section 3553(a)(2)(A).

during which time he experienced neglect. *Id.* ¶ 52. He then went to live with an uncle. *Id.* This living arrangement appears to have been relatively brief, as Hollis reports that the uncle was physically abusive and beat him with umbrellas and baseball bats. *Id.* Tellingly, on the Adverse Childhood Experiences ("ACE") assessment, Hollis scored a 10 out of 10, suggesting that the trauma he experienced during childhood places him at heightened risk for serious disease or other physical or behavioral health problems. *Id.* ¶ 63. Additionally, during PSR interviews, Hollis recounted his own protracted struggles with drug addiction and his mental health. *Id.* ¶¶ 64-65, 60-61.

This history is mitigating, and the government has taken it into account in recommending a 42-month sentence in the 2025 Case and concurrent time in the 2022 Case. However, in the government's view, a lesser sentence would be inappropriate. For one, Hollis has previously been shown leniency. In advance of the sentencing hearing in his prior federal firearms case, U.S. Probation calculated Hollis's Guidelines to be 36 to 46 months in custody. *See* Case No. 22-CR-00447-JSW-2, dkt. 183 (March 2024 Presentence Investigation Report) ¶ 67. The government recommended a custodial sentence of 46 months. Case No. 22-CR-00447-JSW-2, dkt. 187 (Gov. Sentencing Memo.) at 9. The defense recommended a custodial sentence of 30 months. Case No. 22-CR-00447-JSW-2, dkt. 187 (Def. Sentencing Memo.) at 2. Ultimately, the Court sentenced Hollis to 32 months.

Second, Hollis did not reform upon serving the 32-month sentence this Court handed down in April 2024. Instead, he went on to possess a loaded firearm approximately one year later. And while the government is sympathetic to the substance abuse and behavioral health problems Hollis has reported to Probation, he appears to have squandered many of the opportunities and resources presented to him through supervision, as evidenced by his supervised release violations for refusing to submit to drug testing and failing to participate in outpatient mental health treatment.

Third, Hollis's conduct in the 2025 Case demonstrates that he continues to pose a serious risk to the public. That Hollis would again possess a loaded firearm so soon after his release from custody for a similar offense demonstrates an inability or unwillingness to conform his conduct to the law. There is simply no indication that Hollis intends to stop carrying firearms. His conduct to date should give the Court little reason to believe that he has reformed or intends to do so.

The interest in specific and general deterrence of similar criminal conduct counsels in favor of a

42-month sentence. This would represent the second longest sentence Hollis has received, as he was sentenced to six years in state prison for a November 2017 robbery conviction. PSR ¶ 37.[3] If Hollis were to serve 85% of a 42-month sentence in the 2025 Case, it would amount to a custodial term of 35.7 months, meaning that Hollis would spend nearly three full years in custody. And while 42 months represents a four-month downward variance from the low-end of the Guidelines Range, this modest variance seeks to balance the mitigating factors described above against the need for a period of incarceration that is long enough to carry some deterrent value, both to Hollis and to others.

A significant period of incarceration is also necessary to account for the seriousness of the offense, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. Hollis's conduct while on supervised release evinces a disrespect for the law and the conditions of his supervision, as well as a disregard for the well-being of others. The nature of his crimes, the frequency with which he recidivates, and his poor performance while under supervision all underscore the need to protect the community from further crimes of this defendant. A 42-month custodial sentence represents a significant term of incarceration that is necessary to account for the gravity of Hollis's actions, punish his behavior, and separate him from the public.

## V. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence Harold Hollis to a term of 42 months' imprisonment in the 2025 Case and to a concurrent term of 14 months' imprisonment in the 2022 Case. The government further requests that the Court impose a three-year term of supervised release in the 2025 Case, with each of the terms of conditions set forth in the Presentence Report, and that the Court order forfeiture of the recovered firearm and ammunition.

DATED: July 14, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
SLOAN HEFFRON
Assistant United States Attorney

[3] U.S. Probation notes that Hollis served the six-year sentence at "half-time," which suggests that he may have spent considerably less than six full years in custody. PSR at p. 24.